UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SALINA MURO | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:03 CV 541 |
| | ) | |
| FAMILY VIDEO | ) | |
| | ) | |
| Defendant | ) | |

## O P I N I O N

Plaintiff Salina Muro commenced this action on December 22, 2003, by filing a complaint alleging that her employer, Family Video, harassed her on account of her gender, and that this harassment ultimately caused her constructive discharge, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Family Video has moved for summary judgment.

RULE 56 of the FEDERAL RULES OF CIVIL PROCEDURE directs this court to enter summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The considerations applicable to a motion for summary judgment have been concisely summarized by the Court of Appeals:

> A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but "must

> present sufficient evidence to show the existence of each
> element of its case on which it will bear the burden at trial."
> However, neither presenting a scintilla of evidence, nor the
> mere existence of some alleged factual dispute between the
> parties or some metaphysical doubt as to the material facts,
> is sufficient to oppose a motion for summary judgment.  The
> party must supply evidence sufficient to allow a jury to
> render a verdict in his favor.

*Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1087-1088 (7th Cir. 2000) (citations omitted). In the present case none of the material facts are in dispute allowing the court to summarize them quite briefly in the discussion that follows.[1]

Muro herself gives the best overview of the events leading her to file suit in the opening paragraph of her response to Family Video's motion:

> Salina Muro has brought this action as a result of an incident
> that occurred on October 21, 2002, when she attended an
> outing at a local restaurant sponsored by her employer,
> Family Video. On that night, the outing was attended by a
> number of Family Video employees, including Muro's
> immediate manager, Michelle Silva, as well as Silva's own
> immediate supervisor, Katie McIntosh. Muro contends that
> during this event, she went to the ladies room, and while in
> the ladies room, McIntosh pointed a camera over the stall
> occupied by Muro and took a photograph of her using the
> toilet. Muro contends that following the incident, Muro
> demanded the camera and film, however, McIntosh and
> Silva failed and refused to turn the camera and film over,
> despite her repeated requests. Muro contends that shortly
> after the incident, she quit her employment at Family video,
> out of fear and in anticipation of being terminated due to her
> repeated efforts to obtain the camera and photograph.

Muro's Response at 1 (citations omitted).

---

[1] In the court's view, where the parties do disagree the area of disagreement is not material to resolution of the issues raised by Family Video's motion. In any event, the facts narrated in this opinion are as Muro claims them to be.

Family Video argues that it is entitled to summary judgment for three independently-sufficient reasons: there is no evidence that the camera incident, or the related events occurring thereafter, was directed against Muro on account of her gender; the camera incident and related events were not so severe and pervasive as to be actionable under Title VII; and Family Video exercised reasonable care to prevent workplace harassment, while Muro failed to utilize the corrective measures available to her.

The incident in question occurred at an after-work get-together held to celebrate the winning of a company sales contest. Employees and managers from the video store where Muro worked, and from other stores in the district, went out for dinner and drinks at a "Joe's Crab Shack" restaurant in Merrillville, Indiana. The tab for the evening was paid by the regional manager, Roger Rubright, from his own pocket, not by Family Video, and attendance by any employee was voluntary.[2] Muro agreed that the atmosphere at the table was like a loud party. Muro dep at. 62. Some were drinking alcoholic beverages. She wasn't, because she was only 20 years old. Muro dep. at 60-61.

---

[2] For mainly these two reasons, Family Video claims in its statement of undisputed facts that the evening was "strictly a social outing." Memorandum in Support of Motion at p. 3. However, Family Video also admits that Rubright issued McIntosh a written disciplinary warning the next day because of her conduct described in this opinion. McIntosh dep. at 33-34. This is inconsistent with the event being a non-work-related social outing. Thus, for the purposes of deciding the summary judgment motion, the court deems the evening to be employment-related, although this has no impact on the disposition of the Title VII issues.

At some point in the evening Muro and another female employee left the table together to go to the restroom. While Muro was seated in a stall, McIntosh entered the restroom and began joking with other women who were waiting (e.g., "hurry up!") McIntosh took a disposable camera out of her purse, held it up over the top of a stall door—which happened to be the stall occupied by Muro—and pressed the shutter release, causing the flash to shoot. Because the film in the camera was never developed,[3] it is unknown whether the camera was actually aimed at Muro so that she would be visible in the picture taken.

Muro came out of the stall and was angry that a picture had been taken of her sitting on the toilet (she assumed), and directed a profane tirade at McIntosh. At some point Silva entered the restroom and McIntosh gave the camera to her. Muro demanded the camera from Silva. Muro's recollection of Silva's response varies, but is to the effect that Silva intended to use up the seven exposures left on the camera and then throw the camera away.[4] Muro believes that McIntosh and Silva were intoxicated. Muro Dep. at 81.

In the next few weeks at work Muro asked Silva for the camera several times. Muro felt that Silva was scheduling work shifts so that the two of them would not work

---

[3] Silva states she later threw the camera in the garbage. Although Muro stated at p. 96 of her deposition that she "just [doesn't] buy" that explanation, she has identified no evidence suggesting that Silva is lying.

[4] While this statement makes little sense, that would be consistent with Muro's belief that Silva was intoxicated. In addition, Silva has stated without contradiction that she later did throw the camera away.

4

together. During this period, Muro never saw any pictures from the camera, and no one joked or ribbed her about the incident. Muro Dep. at 91, 95. Also during this time, Muro made repeated requests of Jill Henson, a co-employee, to return a photograph (a baby picture of Muro) that she had provided to Henson, who was making a display of store employees' baby pictures so that customers could try to guess which employee matched which picture.

In what turned out to be the final week of Muro's employment, Silva promoted Henson to assistant manager. Muro felt that Silva was showing Henson favoritism: "Towards the end . . . it was like her and Michelle Silva were best friends and teaming up on everybody else in the store." Muro Dep. at 91. Muro felt that the work environment had changed and that Silva "didn't want to talk to me at all," and Muro "didn't feel comfortable being there anymore." Muro Dep. at 117. On November 13, 2002, when Muro went to work McIntosh was there, along with Silva. Apparently because of Muro's requests for the return of the baby photograph, McIntosh told Muro that Henson was now her manager, and that Muro had to show her some respect. Muro stated: "I don't need this," said that she was quitting, and left.

Later that day Muro called the Family Video corporate office and spoke with someone about the camera incident. Muro dep. at 96-97. She did not tell him that she wanted her job back. Muro dep. at 102. He said he would look into the incident and call her back. Muro dep. at 102. After a week, when he had not called back, she called the corporate office again and spoke with a person she believed was the head of the

5

company. Muro dep. at 107-08. He said he would look into the matter and call her back, which he did. Muro dep. at 109. When he called her back, he told her that McIntosh and Silva admitted that the incident had occurred and said that the camera had been thrown away. Muro dep. at 111. He told her there was nothing more he could do for her since she had quit her job. Id. She did not ask for her job back and did not want her job back. Id.  She never asked anyone at Family Video for her job back. Muro dep. at 112. What Muro wanted was the camera, and for McIntosh to be demoted. Muro dep. at 114.

These facts fall far short of establishing an actionable discrimination claim based on either harassment or constructive discharge. Obviously, McIntosh's action in taking the photo can be viewed as an alcohol-impaired lapse in judgment placing her managerial qualifications in doubt. For her conduct to constitute harassment that is actionable sex discrimination, however, Muro must have some evidence that McIntosh's harassment was on account of Muro's gender: "in same-sex harassment cases, the central question is whether the harassment occurred 'because of the plaintiff's sex.'" *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1062 (7th Cir. 2003) (quoting *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 224 F.3d 701, 704 (7th Cir. 2000). "Title VII does not impose liability on an employer for creating or condoning a hostile working environment unless the hostility is motivated by race, gender, or some other status that the statute protects." *Heuer v. Weil-McLain*, 203 F.3d 1021, 1024 (7th Cir. 2000).

6

Muro has made absolutely no response to Family Video's assertion that the record is devoid of evidence that McIntosh's act was motivated by Muro's gender. Because no evidence has been identified to create an issue of fact on that aspect of her claim, Family Video is entitled to summary disposition of Muro's claim for hostile-environment discrimination. In fact, Muro's only argument in response to Family Video's motion for summary judgment is that McIntosh's act in taking the photo and refusing to give Muro the camera was so severe and egregious that it supports liability under Title VII. This goes to a different element of Muro's claim, the need to show that McIntosh's conduct was so severe or pervasive that it altered the terms and conditions of Muro's employment, *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005), and only highlights the fact that this might serve as an additional reason why the claim should be disposed of summarily.

Muro states as an *ipse dixit* that McIntosh's conduct was pervasive and egregious, without analogizing to the facts of pertinent cases, which, as a shorthand way of describing the necessary showing, often say that the environment must be "hellish." *See, e.g.*, *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). Muro may be correct: perhaps it is an obvious conclusion that a jury could find that a photograph taken of a person using the toilet is by itself sufficiently egregious to constitute a hostile environment. It is less obvious, however, that this is true where there is no evidence that the camera was aimed so that the person actually appeared in the photograph, and no evidence that the photograph was ever developed. The court will not answer this

7

question in the abstract, given the holding above that the claim fails because there is no evidence that McIntosh was motivated by Muro's gender.

For the same reasons, it is also doubtful that McIntosh's conduct rises to the level necessary to establish a constructive discharge, which requires conduct even worse than that necessary to establish a hostile environment. *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004). However, the court need not answer this question either, because the court's determination that there is no evidence that McIntosh acted on account of Muro's gender is dispositive. A constructive discharge claim requires a plaintiff to prove working conditions so intolerable that he or she was forced to leave, *and* that those conditions were imposed, i.e., that the discharge occurred, because of the plaintiff's membership in a protected class. *Vitug v. Multistate Tax Com'n*, 88 F.3d 506, 517 (7th Cir. 1996). Because Muro has no such evidence, Family Video is entitled to summary disposition of Muro's claim of a discriminatory constructive discharge.

Finally, the first paragraph of Muro's complaint, captioned "Nature of Action," alleges only that Muro is bringing her action "pursuant to Title VII of the Civil Rights Act of 1964," and Family Video requests summary judgment based on the assumption that her action is limited to that legal theory. In her response, however, Muro asserts that she has a claim under Indiana state law for the tort of invasion of privacy. In its reply memorandum, Family Video, citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996), argues that it is improper for Muro to amend her complaint to assert a new claim in response to a motion for summary judgment after discovery has closed.

8

In *Shanahan*, however, plaintiff's summary judgment response proposed an amendment to the *facts* alleged in the complaint. *Id*. at 779. Here, Muro is not changing any facts, but merely asserting that those facts justify relief under an alternative legal theory. Thus, Family Video's reliance on *Shanahan* is misplaced. The Court of Appeals has consistently held that complaints are not required to identify a legal theory, and that once the plaintiff states what his/her grievance is, he or she may "substitute one legal theory for another without altering the complaint." *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *see Ryan v. Illinois Dept. of Children and Family Services*, 185 F.3d 751, 764 (7th Cir. 1999).[5]

Family Video also objects that Muro's complaint invoked only the court's federal question jurisdiction under 28 U.S.C. § 1331, making no mention of supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367. A complaint does not have to plead the statutory basis for jurisdiction, however, as long as a basis for jurisdiction is

---

[5] *See also Oates v. Discovery Zone*, 116 F.3d 1161, 1177 (7th Cir. 1997) ("The fact that litigants do not have an obligation to plead legal theories does not, however, mean that they are exempt throughout the litigation from informing their opponent and the district court about the legal theories on which they rely. The normal point at which this obligation arises is when the opposing party files a motion for summary judgment.") In this court's experience, a defendant who waits until the summary judgment stage of a case to find out what legal theories are up plaintiff's sleeve does so at the peril of discovering, as in the present case, an unanticipated theory *after* the deadline for filing a summary judgment motion directed at that theory has passed. Better chances for success lie in "smoking out" the plaintiff's theories using contention interrogatories or requests for admission, *see Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002), and after pinning plaintiff down moving for summary judgment on every theory.

9

apparent from the facts alleged, as is true here. *Jensen v. State Bd. of Tax Commissioners*, 763 F.2d 272, 278 (7th Cir. 1985).

Last, in a footnote, Family Video asserts that the claim is meritless in any event, because it is undisputed that McIntosh was not acting within the course and scope of her employment as would be necessary for it to be held liable as her employer. The court does not agree that this is undisputed. As noted above, p. 3 n. 2, Family Video disciplined McIntosh for her actions, at odds with the notion that she was engaged in a private frolic, creating an issue of fact that precludes entry of a summary judgment.

For the foregoing reasons, Family Video's motion for summary judgment (docket entry # 19) is **DENIED**. However, Muro's case proceeds limited solely to the issue whether she can establish the tort of invasion of privacy.

**SO ORDERED.**

ENTER: April 29, 2005

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT